# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY DENARI,<br><br>Plaintiff<br><br>v.<br><br>U.S. DRY CLEANING SERVICES CORPORATION dba U.S. Dry Cleaning Corporation, and ROES 1-10,<br><br>Defendants | CASE NO. 1:17-CV-0031 AWI BAM<br><br>ORDER ON DEFENDANT'S MOTION TO TRANSFER VENUE<br><br>(Doc. No. 6) |

This case stems from an employment relationship between Plaintiff Timothy Denari ("Denari") and his former employer, Defendant U.S. Dry Cleaning Services Corporation ("USDC"). Denari alleges claims for breach of contract, three forms of indemnity, unfair competition, and California Labor Code § 2802.

## FACTUAL BACKGROUND[1]

Denari began his employment with USDC in March 2009 as a consultant. Denari worked out of USDC's corporate headquarters in Newport Beach, Orange County, California, but commuted from his home in Bakersfield, Kern County, California. See Denari Dec. ¶ 7. Denari would telecommute from time to time, and after hours or on weekends would answer e-mails or other communications from his Bakersfield home. All of USDC's corporate employees worked out of the Orange County headquarters. See Cox Dec. ¶ 4. In February 2010, Denari became USDC's Chief Financial Officer.

---
[1] The factual background is taken from the Complaint and the declarations of Denari and Peggy Cox.

On March 4, 2010, USDC filed for Chapter 11 Bankruptcy in the Central District of California – Santa Ana Division. Denari's employment with USDC ceased in June 2010.

In April 2011, USDC filed a debtor's plan with the Bankruptcy Court. Following an objection from the Internal Revenue Service ("IRS"), a stipulation was made whereby USDC would make payments to the IRS of $41,000 per quarter, with $20,500 allocated to non-trust fund payroll taxes and $20,500 allocated to trust fund payroll taxes.

On September 14, 2011, the debtor's plan was amended to include the IRS stipulation ("the Plan"). On September 23, 2011, the Bankruptcy Court entered an order confirming the Plan. Denari did not receive notice or service of the Plan or the order confirming the Plan.

In November 2012, Denari received a notice from the IRS that he was considered a possible responsible party for recovery of USDC's unpaid trust fund payroll taxes that were owing prior to USDC's bankruptcy. However, no demands were actually made.

In March 2013, Denari received another notice from the IRS that he was considered a possible responsible party for recovery of USDC's unpaid trust fund payroll taxes that were owing prior to USDC's bankruptcy. However, no demands were actually made.

Upon representations that the bankruptcy case was on track and that USDC was fully performing, the bankruptcy case was closed on June 5, 2013. At all relevant times, Denari was informed by USDC's officers and corporate counsel that USDC was current on its payments and that the IRS debt would be paid in full by April 2015.

In April 2015, Denari learned that there were issues with the application of payments, but that payments were still being made. Subsequently, Denari learned that USDC had requested an extension through the end of July 2015. The Plan's deadline was extended to December 2015.

In September 2015, the IRS made an assessment against Denari for $214,202.04 and demanded payment in full.

Denari made numerous demands on USDC to indemnify him against the IRS demands and assessment. USDC refused and did not do so.

In January 2016, the IRS placed a lien on Denari's assets because the assessment was not paid in full.

USDC was headquartered in Orange County, California until March 31, 2015, when it operated "remotely." Cox Dec. ¶ 3. USDC moved its headquarters to Houston, Texas in December 2015.

Denari's communications with USDC personnel and officers were directed to individuals located in Orange County; Denari never sent communications to Houston. See Denari Dec. ¶¶ 16, 18. The communications from the IRS to Denari were received in Bakersfield, as were the communications from USDC officers to Denari regarding the IRS notices and assessments and USDC's performance under the Plan. The IRS lien was also filed against Denari in Kern County.

USDC maintains numerous One Hour Martinizing businesses in Fresno County, California. At all relevant times to this case, USDC's Bylaws and Articles of Incorporation stated that USDC shall indemnify its current and former officers to the fullest extent allowed by law.

## **DEFENDANT'S MOTION**

*Defendant's Argument*

USDC argues that venue is improper in the Eastern District of California ("EDCA") as none of the three categories of venue under § 1391(b) apply. First, for purposes of § 1391(b)(1), no defendant resides in the Eastern District. USDC argues that it is the only defendant, and its corporate headquarters are in Houston, Texas. Prior to Houston, the corporate headquarters where in Newport Beach, California, which is not in the EDCA. Second, for purposes of § 1391(b)(2), there is no indication that a substantial part of the events or omissions giving rise to the claims at issue occurred in the EDCA. The claims at issue center around Denari's employment with USDC, which occurred in Newport Beach. Denari cannot show that any of the alleged acts or omissions (such as the alleged failure of USDC to pay tax contributions, entering into the stipulation with the IRS, and allegedly failing to make payments under the stipulation/the Plan) occurred in the EDCA. The only thing that connects this case to the EDCA is the impact of USDC's alleged conduct on Denari. Third, § 1391(b)(3) does not apply because USDC could be sued in Houston. As venue is not proper in the EDCA, the Court should either dismiss this case or transfer it to Houston.

3

In reply, USDC argues that its motion is timely. USDC raised improper venue as an affirmative defense in its answer, included it as an affirmative defense in its amended answer, and filed the pending 12(b)(3) motion. This conduct comports with Rule 12(h)(1). USDC also argues that Denari has not cited cases that support his reliance on the location of the harm suffered as being a "substantial event." The cases that are heavily relied upon are debt collection cases in which the location where the improper communication was received is an element of a claim and a substantial event. There are no claims alleged under any debt collection statute in the Complaint. Further, Denari has not shown that USDC resides in the EDCA. There are no allegations in the Complaint that relate to USDC's operations in Fresno, and none of the conduct alleged occurred in Fresno and thus, the claims do not arise out USDC's actions within the EDCA. Finally, USDC reiterates that Houston is a proper forum to transfer this case. Alternatively, if it is determined that the EDCA is a proper forum, then the case should be transferred to the Central District of California.

*Plaintiff's Opposition*

Denari argues that the motion to dismiss is untimely because it was filed after USDC filed its answer. On this basis alone, the motion should be denied.

Alternatively, venue is proper in the EDCA because a substantial portion of the facts underlying the claim arose in Kern County. Denari lived in Kern County while he was employed with USDC and thereafter. The notices, assessment, lien, and harm all occurred in Kern County. Further, communications from Denari to USDC originated in Kern County and the responses by USDC were directed to and received in Kern County. These are all substantial facts and all occurred within the EDCA.

Venue is also proper because the evidence indicates that USDC resides in the EDCA. USDC conducts substantial business operations in the Fresno area through its One Hour Martinizing businesses.

Finally, Denari argues if the Court determines that venue is improper in the EDCA, then the case should be transferred to Orange County and not Houston. USDC simply changed its principal place of business to Houston, but the declarant who provided this information does not

state where she is located. Further, there is no description of what business activities are actually conducted in Houston and by whom. In contrast, the current CEO of USDC and many key witnesses are located in Orange County, the bankruptcy case was venued in Orange County, and Orange County is a much more convenient forum for Denari and other witnesses than Houston.

*Legal Standard*

Venue in federal court is generally governed by 28 U.S.C. §1391. Atlantic Marine Constr. Co. v. United States Dist. Ct., 134 S. Ct. 568, 577 (2013). Section 1391 in relevant part provides that a "civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). A corporation "resides" in whatever State it is subject to personal jurisdiction. See 28 U.S.C. § 1391(c)(2); Bojorquez v. Abercrombie & Fitch, Co., 193 F.Supp.3d 1117, 1130 (C.D. Cal. 2016). For states with multiple federal judicial districts, a corporate defendant "resides" in "any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state . . . ." 28 U.S.C. § 1391(d); Lindora, LLC v. Isagenix Int'l, LLC, 198 F.Supp.3d 1127, 1146 (S.D. Cal. 2016).

*Discussion*

a.  Timeliness of Motion

In pertinent part, Rule 12 provides that a "motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Consistent with this language, the Ninth Circuit "allows a motion under Rule 12(b) any time before the responsive pleading is filed." Aetna Life Ins. Co. v. Alla Med. Servs., Inc., 855 F.2d 1470, 1474 (9th Cir. 1988). Rule 12(b) motions that are filed after the defendant's responsive pleading are "technically untimely." Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 954-55 & n.2 (9th Cir. 2004) (holding that a post-answer Rule 12(b)(6) motion should have been treated as a motion under Rule

12(c) or 12(h)(2) and that a post-answer Rule 12(b)(1) could be addressed under Rule 12(h)(3)); Augustine v. United States, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983). However, a defense of improper venue may be asserted in a responsive pleading or in a Rule 12(b)(3) motion to dismiss. See Fed. R. Civ. P. 12(b); Misch v. Zee Enterprises, Inc., 879 F.2d 628, 631 (9th Cir. 1989); Costlow, 790 F.2d at 1488. As long as a Rule 12(b) motion was not previously filed, the inclusion of the defense of improper venue in an answer or an amended answer filed as a matter of course preserves the venue defense. See Fed. R. Civ. P. 12(h)(1). Moreover, if a defendant "so moves, any defense listed in Rule 12(b)(1)-(7) – whether *made in a pleading or by motion* – . . . must be heard and decided *before* trial unless the court orders a deferral until trial." Fed. R. Civ. P. 12(i). Consistent with these provisions, many courts will hear a post-answer Rule 12(b) motion as long as no prior Rule 12(b) motion was filed and the particular 12(b) defense was asserted in the answer. See Hedges v. Trailer Express, Inc., 2015 U.S. Dist. LEXIS 10071, *6-*7 (W.D. Okl. Jan. 29, 2015); Davis v. Renken, 2013 U.S. Dist. LEXIS 195406, *8 n.1 (S.D. Fla. Mar. 14, 2013); Dell Marketing, L.P. v. Incompass IT, Inc., 771 F.Supp.2d 648, 653-54 (W.D. Tex. 2011); Hillis v. Heineman, 2009 U.S. Dist. LEXIS 77848, *3 (D. Ariz. Aug. 31, 2009); Imageline, Inc. v. Hendricks, 2009 U.S. Dist. LEXIS 71125, *3 n.1 (C.D. Cal. Aug. 12, 2009); Pope v. Elabo GmbH, 588 F.Supp.2d 1008, 1013 (D. Minn. 2008); Molnlycke Heach Care AB v. Dumex Med. Surg. Prods. Lit., 64 F.Supp.2d 448, 449 n.1 (E.D. Penn. 1999); see also 5C Charles Alan Wright, et al., Federal Practice & Procedure § 1361 (3d ed. 2017 update) (acknowledging that some courts have rejected a "strict interpretation" of Rule 12(b)'s timing language and will allow "untimely motions" if the defense was previously included in the answer). These courts then address and asses the particular 12(b) defense under the appropriate Rule 12(b) motion framework. See id.

But for *Elvig*, *Aetna Life Ins.*, and *Augustine*, this Court would join the above district courts and rule on USDC's motion as a Rule 12(b)(3) motion. However, it seems that the three Ninth Circuit cases would be inconsistent with such an approach. Because USDC filed an answer before it filed its Rule 12(b)(3) motion, see Doc. Nos. 5 & 6, the Court believes that it is constrained to hold that the Rule 12(b)(3) motion as untimely. See Elvig, 375 F.3d at 954-55 & n.2; Aetna Life Ins., 855 F.2d at 1474; Augustine, 704 F.2d at 1075 n.3.

Nevertheless, the fact remains that USDC has not waived the defense of improper venue. That defense has been raised in every defensive filing by USDC – first in its original answer, then its 12(b)(3) motion, and lastly in its amended answer (which was filed as a matter of course under Rule 15(a)). See Doc. Nos. 5, 6, 7. USDC is now moving to have its defense decided. This is proper under the plain language of Rule 12(i), and it is appropriate to decide the venue issue prior to trial. Therefore, the Court will determine USDC's venue objection as a Rule 12(i) motion.[2] See Fed. R. Civ. P. 12(i); see also 5C Charles Alan Wright, et al., Federal Practice & Procedure § 1361 (3d ed. 2017 update) (noting that an untimely Rule 12(b) motion is tantamount to a proceeding under Rule 12(i)).

b. Venue In The EDCA

1. § 1391(b)(1) – Where The Defendant Resides

There are multiple federal judicial districts within California. As a result, USDC resides in the EDCA if, assuming that the EDCA was a separate State, the EDCA could exercise personal jurisdiction over USDC. 28 U.S.C. § 1391(d); Lindora, 198 F.Supp.3d at 1146. Denari contends that USDC "resides" in the EDCA because USDC and its subsidiaries operate several Martinizing dry cleaning stores within Fresno and Merced Counties. The Court understands Denari to be arguing that USDC is subject to general jurisdiction based on the number of dry cleaning businesses that it and its subsidiaries operate in the EDCA.

A corporation's continuous and substantial activities within a State may make it subject to general jurisdiction within that State. Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014). Courts have general jurisdiction over a "foreign corporation" if the corporation's connections to the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." Id.; Williams v. Yamaha Motor Co., 851 F.3d 1015, 1020 (9th Cir. 2017). A corporation's "continuous activity of some sort within a state is [generally] not enough to support the demand that the corporation be amenable to suits unrelated to that activity." Daimler AG, 134 S.Ct. at 757; Williams, 851 F.3d at 1020. The paradigms for exercising general jurisdiction are the State

---
[2] Both sides have submitted evidence and fully briefed the question of improper venue. Although the Court has not heard oral argument, the parties have been sufficiently heard for purposes of Rule 12(i). See Gallo-Rodriguez v. United States, 513 F. App'x 971, 973-74 (Fed. Cir. 2013).

7

1 where the corporation is incorporated or the State where the corporation has its principal place of business. Williams, 851 F.3d at 1020. Here, Denari has demonstrated only that USDC and its subsidiaries operate approximately 13 dry-cleaning stores in the EDCA. See Denari Dec. Ex. J. It is unknown how long these stores have operated in the EDCA, or how these stores relate to or fit within USDC's operations.[3] Without more, the Court cannot conclude that USDC's operations in the EDCA are so continuous, systematic, and substantial as to subject it to general jurisdiction in the EDCA. See Daimler AG, 134 U.S. at 754, 757; Williams, 851 F.3d at 1020.

Denari has not demonstrated that USDC "resides" within the EDCA. See 28 U.S.C. §§ 1391(b)(1), (d); Daimler AG, 134 U.S. at 754, 757. Therefore, venue is not proper in the EDCA under § 1391(b)(1).

### 2. § 1391(b)(2) – Substantial Events or Omissions

#### a. Contract Based Claims – First, Second, & Fifth Claims For Relief

Denari alleges three contractual claims in this case – breach of contract, breach of express indemnity, and breach of implied indemnity.[4] The Ninth Circuit has held that "venue for a claim based on breach of contract [is] the place of intended performance." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 842 (9th Cir. 1986); Lee v. Correction Corp. of Am., 525 F.Supp.2d 1238, 1242 n.3 (D. Haw. 2007).

When Denari was employed by USDC, he was employed at the company's headquarters in Orange County. At the time of employment/contract, any decision to indemnify could be expected to be made at the Orange County headquarters. There is nothing to suggest that when the contract was made that an indemnity decision or funds would either be authorized or paid from a location other than Orange County. Similarly, when the agreement with the Plan was made, the bankruptcy proceedings were in Orange County, where USDC remained headquartered. Again, nothing suggests that the funds owing to the IRS would be paid from a location other than Orange County. Therefore, the contracts/agreements at issue were to be performed in Orange County.

---

[3] A screen shot of USDC's website indicates that Martinizing is one of six "brands" of dry cleaning businesses operated by USDC. See Denari Dec. Ex. I.

[4] The Court reads Denari's "implied indemnity" cause of action as alleging "implied contractual indemnity." See Prince v. Pacific Gas & Elec. Co., 45 Cal.4th 1151, 1158-59 (2009).

8

Because Orange County is in the Central District of California, the proper venue for the three contract claims is the Central District of California. See Decker Coal, 805 F.2d at 842; Lee, 525 F.Supp.3d at 1242 n.3.

### b. Third Claim For Relief – California Labor Code § 2802

Labor Code § 2802 in relevant part reads that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." Cal. Lab. Code § 2802(a); Carter v. Entercom Sacramento, LLC, 219 Cal.App.4th 337, 345 (2013). Thus, § 2802(a) "requires the employer to *indemnify* the employee for all that the *employee necessarily expends* in direct consequence of the discharge of the employee's duties." Carter, 219 Cal.App.4th at 345 (emphasis in original). The purpose of § 2082 is to "protect employees from suffering expenses in direct consequence of doing their jobs." Grissom v. Vons Cos., Inc., 1 Cal.App.4th 52, 60 (1991). The obligations created by § 2802 are statutory in nature, not contractual. Carter, 219 Cal.App.4th at 347; Grissom, 1 Cal.App.4th at 60.

An expenditure of funds or an actual loss of some sort is an elements of a § 2802 claim. See Cal. Lab. Code § 2802(a); Carter, 219 Cal.App.4th at 345. Given the importance of an expenditure or loss to a § 2802 claim, the Court concludes that an expenditure or loss is a substantial part of a § 2802 claim, and thus, the location of the expenditure or loss is a place where a substantial portion of a § 2802 claim occurs. Here, Denari's complaint alleges that he suffered loss and expenditures around September 2015 in direct consequence of his actions as USDC's CFO. See Complaint ¶ 35. Because Denari resided in Bakersfield at all relevant times, Denari's loss and expenditures would have occurred in Bakersfield, which is the EDCA. Therefore, a substantial part of the events that make up Denari's § 2802 claim occurred in the EDCA, and venue is proper in the EDCA. See 28 U.S.C. § 1391(b)(2); Carter, 219 Cal.App.4th at 345.

### c. Fourth Claim For Relief – Equitable Indemnity

Equitable indemnity is a common law tort. Preferred Risk Mutual Ins. Co. v. Reiswig, 21 Cal.4th 208, 216 (1999); see also Wickland Oil Terminals v. Asarco, Inc., 654 F. Supp. 955, 960 (N.D. Cal. 1987) ("A claim for equitable indemnity sounds in tort."). The Ninth Circuit has

recognized that the location of harm is a relevant consideration in tort cases. See Myers v. Bennett Law Offices, 238 F.3d 1068, 1075-76 (9th Cir. 2001); Samson Tug & Barge Co., Inc. v. Koziol, 869 F.Supp.2d 1001, 1016 (D. Alaska 2012). More to the point, the Ninth Circuit has upheld venue in a "tort-like" action were one of the harms was felt in the district where suit was filed. See Myers, 238 F.3d at 1075-76; Samson Tug & Barge, 869 F.Supp.2d at 1016.

Denari's declaration makes it clear that Denari has felt harm in Bakersfield/the EDCA. See Denari Dec. ¶¶ 3, 14, 15, 16. The EDCA is where Denari's funds have been expended, where IRS notices have been received, and where the IRS lien has been imposed. Under *Myers*, a substantial portion of the events giving rise to Denari's equitable indemnity claim occurred in the EDCA. See Myers, 238 F.3d at 1075-76; Samson Tug, 869 F.Supp.2d at 1016. Therefore, venue for the equitable indemnity claim is proper in the EDCA. See 28 U.S.C. § 1391(b)(2); Myers, 238 F.3d at 1075-76; Preferred Risk, 21 Cal.4th at 216.

          d.    Sixth Claim – Unfair Competition (Cal. Bus. & Profs. Code § 17200)

Denari's Unfair Competition claim is based on the "failure to make restitutive payments to the IRS while at the same item paying other debts and paying officers and directors . . . ." Complaint ¶ 47. Unfair competition claims under § 17200 are classified either as torts, see Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1203 (9th Cir. 2001); United Tactical Sys. LLC v. Real Action Paintball, Inc., 108 F. Supp. 3d 733, 747 (N.D. Cal. 2015), or statutory torts. See Bloom v. Universal City Studios, Inc., 734 F. Supp. 1553, 1560 (C.D. Cal. 1990); Brourman v. Tenet Healthsystem Hosps., Inc., 2002 Cal. App. Unpub. LEXIS 10416, *10 (2002).[5]

A similar analysis applies to this claim as applies to the equitable indemnity claim. As a tort or statutory tort, the location of the harm or injury is highly relevant. It is in the EDCA where Denari has experienced the entirety of the harms and financial injuries at issue. Furthermore, Denari alleges that that USDC's conduct violated *inter alia* Labor Code § 2802. See Complaint ¶ 48. That is, the Unfair Competition claim rests in part on proving a violation of § 2802. By extension, the substantial conduct surrounding a violation of § 2802 would also be substantial with

---

[5] Despite state rules, the Court may consider unpublished state cases as persuasive authority. See Employers Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); Robles v. Agreserves, Inc., 158 F.Supp.3d 952, 976 n.12 (E.D. Cal. 2016).

respect to the Unfair Competition claim. As discussed above, the EDCA is a proper venue for Denari's Labor Code § 2802 claim. Therefore, given the interaction between Denari's § 2802 and Unfair Competition claims, and given the location where Denari felt the harm of USDC's conduct, a substantial portion of the events that make up the Unfair Competition claim occurred in the EDCA. Venue for the Unfair Competition claim is proper in the EDCA. See 28 U.S.C. § 1391(b)(2); Myers, 238 F.3d at 1075-76.

### 3. Pendent Venue

Generally, venue must be proper as to each cause of action. Lamont v. Haig, 590 F.2d 1124, 1136 (D.C. Cir. 1978); Young v. California Corr. Health Care Servs., 2014 U.S. Dist. LEXIS 163446, *4 (S.D. Cal. Nov. 21, 2014); Martensen v. Koch, 942 F.Supp.2d 983, 996 (N.D. Cal. 2013); Allstar Mktg. Grp., LLC v. Your Store Online, LLC, 666 F.Supp.2d 1109, 1126 (C.D. Cal. 2009); Multimin USA, Inc. v. Walco Int'l, Inc., 2006 U.S. Dist. LEXIS 33624, *5 (E.D. Cal. Apr. 7, 2006). However, under a "pendent venue" theory, where all claims arise out of a common nucleus of operative facts, if venue for one of the claims in the chosen forum is proper, then venue may be exercised as to the other claims, even if venue over the other claims would not otherwise be proper. See Flamingo Indus. v. United States Postal Serv., 302 F.3d 985, 997 (9th Cir. 2002);[6] Beattie v. United States, 756 F.2d 91, 101-04 (D.C. Cir. 1984)[7]; High River P'ship v. Mylan Labs., Inc., 353 F.Supp.2d 487, 493 (M.D. Pa. 2005).

Here, Denari brings six causes of action against USDC. As discussed above, venue in the EDCA is proper as to three of the six. The Court is satisfied that the claims at issue share a common nucleus of operative facts. All of the claims involve USDC's failure to pay the IRS assessment aimed at Denari and related to Denari's conduct as an officer of USDC. Because all claims share a common nucleus of operative facts, and venue for the three non-contract based claims is proper in the EDCA, venue can be properly exercised over the three contract-based claims in the EDCA. See Flamingo Indus., 302 F.3d at 997-98 (finding that, because venue was proper in the Northern District of California for an antitrust claim, venue was also proper for an

---

[6] Reversed on other grounds by 540 U.S. 736 (2004).

[7] Abrogated on other grounds by Smith v. United States, 507 U.S. 197 (1993).

11

Unfair Competition claim and a 42 U.S.C. § 1983 claim because all claims involved a common nucleus of facts); Beattie, 756 F.2d at 101-04; High River, 353 F.Supp.2d at 493. Therefore, USDC's request to either dismiss this case will be denied.[8]

USDC has requested that the Court transfer this matter to the Central District of California if the EDCA is found to be a proper venue. The Court takes USDC to be requesting a transfer under 28 U.S.C. § 1404. However, USDC has addressed none of the relevant factors that are considered in evaluating a § 1404 motion. See generally Critters of the Cinema, Inc. v. Nestle Purina Petcare Co., 2016 U.S. Dist. LEXIS 68219 (E.D. Cal. May 24, 2016). Because the requested transfer is insufficiently briefed and supported, USDC's request is denied.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendant's motion to dismiss (Doc. No. 6) based on improper venue is DENIED.

IT IS SO ORDERED.

Dated:  June 27, 2017

_____
SENIOR DISTRICT JUDGE

---

[8] Some courts have recognized that separately pled claims may amount to a single cause of action that has multiple grounds for relief. E.g. Beattie, 756 F.2d at 100; Zazzali v. Swenson, 852 F.Supp.2d 438, 445 (D. Del. 2012). These courts will exercise venue over all of the claims because there is only a single cause of action at issue. See id. Under this theory, it would appear that many of the claims alleged by Denari would be part of a single cause of action. However, because the Court is satisfied that pendent venue under *Flamingo Indus.* is proper, the Court need not decide whether the "single cause of action" theory applies to the entirety of this case.